IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>IVAN RODRIGUEZ VELAZQUEZ;<br><br>SANDRA IVETTE MIRANDA<br><br>MONTANEZ<br><br><br><br><br>Debtor(s) | CASE NO. 18-02209-EAG11<br><br>Chapter 11<br><br><br><br><br><br><br>FILED & ENTERED ON MAY/27/2020 |

## OPINION AND ORDER

An evidentiary hearing in this case commenced on May 29, 2020 to consider the confirmation of the debtors' plan of reorganization [at docket no. 191], as supplemented [at docket no. 226], and an objection to it of HIBISCUSPR LENDO LLC [at docket no. 227], as supplemented [at docket no. 236]. At the hearing the court heard the testimony of the debtors' financial advisor and examined the parties' exhibits. Originally the confirmation hearing was continued to a later date to allow the court to consider the evidence and rule from the bench. But now that the court is entering instead this opinion and order, the hearing set for May 27, 2020 at 1:00 p.m. is set aside and the confirmation hearing is concluded.

The debtors' plan consists of three impaired classes. Class 2 (general unsecured creditors) and Class 3 (CRIM) have voted to accept the plan. The only objecting party is the sole creditor of Class 1: Hibiscus. Hibiscus filed a secured proof of claim in the amount of $3,007,656.09. [Claims Register No. 4-1.] And it elected timely to treat its claim under section 1111(b)(2) of the Bankruptcy Code.[1] [Docket no. 134]. As stated in open court, the parties agree that the present value of Hibiscus' collateral is $1,620,000.

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to title 11 of the United States Code, 11 U.S.C. §§ 1010-1532, as amended. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

The plan provides that Hibiscus' claim shall be paid in full commencing with equal monthly installments of $7,000 for 36 months, followed by $8,000 for 12 months, then $9,000 for 192 months, and a balloon payment of $1,725,000 on the 240th month. The plan uses a 6.25% discount rate to calculate the present value of all payments. Hibiscus will retain its liens and mortgages encumbering the debtors' three real properties until the payment in full of its allowed claim.

The debtors propose to fund their plan from the rents generated by their three real properties (which consist of 13 residential leases and one commercial lease) and the income generated by the operation of a cafeteria (which they lease and operate).

Hibiscus objects to the confirmation of the plan on grounds that it does not meet the feasibility requirement of section 1129(a)(11) and the fair-and-equitable requirement of section 1129(b)(2). On feasibility, Hibiscus says the operating reports show that the debtors historically do not have enough cash at the end of the month to make the plan payments. Hibiscus also says that the debtors' future rental income is highly uncertain because of the Covid-19 pandemic and the balloon payment in month 240 poses a significant risk to it. And this repayment term is too long to be fair and equitable according to Hibiscus. Although Hibiscus objected in its filings to the plan's 6.25% discount rate, it withdrew that objection at the confirmation hearing.

The direct testimony of the debtors' financial advisor, CPA Luis R. Carrasquillo, was admitted into the record, without objection, by way of his unsworn declaration under penalty of perjury. [Exhibit 13, docket no. 234-13.] Hibiscus cross-examined Mr. Carrasquillo.

During cross-examination Mr. Carrasquillo was questioned on the feasibility report he prepared. [Exhibit 9, docket no. 234-9.] Total payments to be made by the debtors on the effective date of the plan amount to $19,629 ($771 in priority tax claims, $975 in administrative expense claims, $7,000 to Hibiscus, $7,323 to general unsecured creditors, and $3,560 to CRIM). [Docket no. 234-9, p. 8.] Mr. Carrasquillo admitted that the ending cash balances for January, February, March, April, October, November, and December 2019 and January, February, and March 2020 are less than $19,629. [Docket no. 234-9, p. 19.] In re-direct, Mr. Carrasquillo explained that the ending cash balances for the last six months have been adversely affected by chapter 11 expenses of more than $80,000, which will disappear after confirmation, thereby increasing cash-flow and enabling the debtors to make plan payments.

Six of debtors' 13 residential units are rented to university students. Universities are currently closed, and Hibiscus says are likely to remain closed through the fall 2020 semester because of the Covid-19 pandemic. Thus, according to Hibiscus, the debtors will be unable to collect projected rents from their apartment units in Ponce.

When asked about the impact of the Covid-19 pandemic on the debtors' rental income, Mr. Carrasquillo admitted to not knowing when the Pontifical University will resume in-person classes. But in re-direct, he explained that the six student rentals represent 30% of the debtors' rental income and only 9% of their total income. Mr. Carrasquillo stated that the debtors collected 100% of March rent and that, as of April 24, only two student-tenants had not paid April rent, but their parents had committed to doing so before the end of the month. Mr. Carrasquillo further explained that, even if the debtors lost the six student tenants, their units could be rented easily as Section 8 Housing considering the uptick in demand for housing in Ponce due to the destruction of many local housing units by recent earthquakes. But he admitted in re-cross that none of the units are being marketed now because they are currently all occupied.

As to the cafeteria income, Mr. Carrasquillo admitted in re-direct that while the debtors' plan projects that the cafeteria revenue will reach $25,000 by October 2020, the only month that cafeteria income reached more than that was February 2020. But, in re-direct, Mr. Carrasquillo explained that the cafeteria had opened in April 2019 and that its revenue was increasing until the earthquakes started hitting Ponce in January 2020. In March 2020, even with the Covid-19 lockdown, cafeteria revenue reached $18,000 because the debtors adapted to the lockdown and changed their business model to takeout/delivery orders while working the cafeteria themselves without external employees to reduce expenses.

Mr. Carrasquillo pointed out that Class 3 creditor CRIM will be paid in 36 monthly payments and Class 2 general unsecured creditors will be paid in 60 monthly payments. Thus, after year five, only Hibiscus will be receiving plan payments. And its claim will be paid in full in 239 monthly payments with a final balloon payment of $1,725,000 in month 240.

Mr. Carrasquillo testified that the balloon payment will be made by refinancing the real properties and/or with money saved by the debtors during the 20-year life of the plan. He further testified that the 20-year term is standard and customary for current mortgage loans. And he added that the improvement in the debtors' financial condition after the fifth year of the plan needs to be taken into consideration. By the court's calculation, plan payments will decrease by more than

3

$2,300 after 36 months when the debtors complete payments to CRIM and the Department of Treasury.

Confirmation of a chapter 11 plan is governed by section 1129 of the Bankruptcy Code. Feasibility is required for confirmation under section 1129(a)(11). A plan is confirmable only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization. . .." 11 U.S.C. § 1129(a)(11). In order for a plan to be feasible under section 1129(a)(11), it must "'offer[] a reasonable assurance of success,' but it need not 'guarantee[]' success." Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.), 634 F.3d 79, 106 (2d Cir. 2010) (quoting Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988)). Based on the evidence presented at the hearing and the testimony of Mr. Carrasquillo, the court finds that the debtors' plan "offers a reasonable assurance of success" and is thus feasible under section 1129(a)(11).

Because of the substantial chapter 11 expenses, the court finds that total monthly cash receipts—instead of ending cash balances—is a better dollar amount to determine whether the debtors can make plan payments on the effective date of the plan. And the total cash receipts show that they can.

The court acknowledges that the debtors are not completely unscathed by the Covid-19 pandemic and lockdown in Puerto Rico. But their cafeteria still generated income of $20,315.37 in April 2020. Indeed, cafeteria income was greater in April 2020 than in March 2020 in spite of the Covid-19 lockdown. [Docket no. 239, at. p. 4.] And the debtors' total revenue in April 2020 was $30,615. [Id.] The April operating report also shows that the Covid-19 lockdown had a minimal effect on the debtors' rental income as they were able to collect $10,300 out of the usual $10,645 in rents. [Id.]

As to the $1,725,000 balloon payment to be made in 2040, the court finds that it is feasible. The plan assumes a modest 1% increase in the value of the debtors' real properties throughout its life, which results in a projected collateral value of $1,976,000 in 2040. Mr. Carrasquillo testified that, with that collateral value and an 80% loan-to-value ratio, the debtors should be able to raise $1,581,000 in mortgage loans on their real properties in 2040. [Docket no. 200, pp. 11-12.] The debtors then would make up the difference between that amount and the $1,725,000 lump-sum payment with savings they expect to accumulate in years 4 through 20 of their plan. Given that the real properties are income generating properties, the court finds those projections to be reasonable.

We turn now to whether the structure and duration of the proposed plan are fair and equitable.  The debtors' feasibility report shows that at the end of the 20-year period Hibiscus will have received $3,801,000.00 in plan payments and that the net present value of those payments is $1,653,834.95 using a 6.25% discount rate.  [Docket no. 234-9, p. 10.]  As testified by Mr. Carrasquillo, this proposed treatment is required to satisfy the section 1111(b)(2) election.

"[A]n election under section 1111(b)(2) merely converts a secured creditor's entire claim, including its unsecured deficiency claim, into a secured claim; that is, it overrides section 506(a)'s bifurcation of an undersecured creditor's debt into two claims." 7 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 1111.03[4] (16th ed. 2020). To cram down a dissenting 1111(b) creditor, section 1129(b)(2)(A)(i) requires that the creditor "has the right to receive over time cash payments equal to the allowed amount of its claim, and to have a continuing lien against its collateral to secure the outstanding balance of its 'allowed claim.'" 7 Collier on Bankruptcy ¶ 1111.03 [5].

The court finds that the structure of the payment to Hibiscus is fair and equitable. The plan's 6.25% discount rate adequately compensates Hibiscus for the risk factor, which it says is too high, in the debtors' plan.  "Because application of § 1111(b) requires that the present value of such a note equal only the value of the creditor's collateral, the solution lies in a below-market rate of interest." Gen. Elec. Credit Equities, Inc. v. Brice Rd. Devs., L.L.C. (In re Brice Rd. Devs., L.L.C.), 392 B.R. 274, 287 n.8 (B.A.P. 6th Cir. 2008).  A debtor can satisfy the 1111(b) requirement that a creditor receives payments totaling its claim while retaining its liens until full payment by "provid[ing] for a note in the face amount of the electing creditor's allowed claim but with a below market interest rate such that the present value of the note would still only be the present value of the collateral." In re Pamplico Highway Dev., 468 B.R. 783, 792 (Bankr. D.S.C. 2012). Thus, the higher the discount rate, the higher the payments must be to satisfy the requirement that the payment stream equals the present value of the collateral at confirmation. As such, the debtors are compensating Hibiscus' risk by using an overly generous 6.25% discount rate to all plan payments.

To determine whether a lengthened repayment period is fair and equitable, "courts often look to the applicable markets, when at all possible, to determine what is reasonable, and should consider the preexisting contract length and the customary length of repayment for similar loans." In re Bryant, 439 B.R. 724, 744 (Bankr. E.D. Ark. 2010). "A payout over 20 years is not excessive

5

or unreasonable when the collateral is real estate." In re Mulnix, 54 B.R. 481, 484 (Bankr. N.D. Iowa 1985); see also In re O'Farrell, 74 B.R. 421, 424 (Bankr. N.D. Fla. 1987)(30-year repayment term reasonable for loan secured by real estate).

The court agrees with the debtors that the 240-month repayment schedule is a direct result of Hibiscus' section 1111(b)(2) election and is the only way the debtors can satisfy in full a $3,007,656.09 debt secured with collateral valued at only $1,620,000. The lengthened repayment term will allow the debtors the opportunity to make plan payments and reorganize. And, the plan provides that Hibiscus will retain its liens on the collateral. Hibiscus can exercise its secured-creditor rights upon a plan default.

In conclusion and for the reasons stated above, the court finds that the debtors' plan, as supplemented, meets the requirement of section 1129(a), except paragraph (8) therein. It also finds that the plan, as supplemented, is "fair and equitable" with respect to Hibiscus and, thus, meets the requirements of section 1129(b). A separate order of confirmation shall be entered. The hearing scheduled for May 27, 2020 at 1:00 p.m is vacated and the confirmation hearing in this case is concluded.

IT IS SO ORDERED.

In Ponce, Puerto Rico, this 27 day of May, 2020.

Edward A. Godoy
U.S. Bankruptcy Judge

6